IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LEISA ERICKSON | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv135 |
| SMITH COUNTY, TEXAS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Leisa Erickson, a prisoner confined at the Dawson State Jail, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The lawsuit concerns a complaint by the Plaintiff that she was kept in custody three months and twelve days beyond the expiration of her sentence. She argued that keeping her in custody beyond the expiration of her sentence violated her rights guaranteed by the Eighth Amendment to the United States Constitution made applicable to the Defendants by the Fourteenth Amendment to the United States Constitution. She sued Smith County and Corrections Corporation of America ("CCA") for compensatory and punitive damages.

The competent summary judgment evidence submitted in this case reveals that on March 28, 2005, the Plaintiff was sentenced to fourteen months confinement in a state jail facility after pleading guilty to the criminal offense of Manufacturing or Delivery of a Controlled Substance. She was credited for time served. The original judgment gave her credit for only three days. The Plaintiff

was sent to the Dawson State Jail, which is managed by Defendant CCA, on April 22, 2005. On September 2, 2005, the 241st Judicial District Court of Smith County issued a nunc pro tunc judgment giving the Plaintiff 158 days credit for time served. The docket sheet states that a certified copy of the nunc pro tunc judgment was mailed to the Plaintiff and the Dawson State Jail on October 4, 2005. On December 30, 2005, the 241st Judicial District Court issued an order giving the Plaintiff 168 days credit for time served. A TDCJ Commitment inquiry, dated April 19, 2007, indicated that the Plaintiff's sentence begin date was thus October 11, 2004. Her maximum expiration date was December 9, 2005. She was not released until March 27, 2006, when Dawson State Jail received authorization from TDCJ to release her.

The competent summary judgment evidence also includes a letter from the Plaintiff to the Smith County District Clerk, filed December 2, 2005, stating that her release date should be mid-December and that she thought the District Clerk should notify TDCJ of the court's nunc pro tunc judgment. More specifically, she stated that "[w]ithout your notifying Texas Dept. of Criminal Justice in Huntsville, TX I will not be granted this time. Could you please notify them as quickly as possible so that I may get this 158 days credit and be released in Dec. 2005." Another letter from the Plaintiff to Judge Jack Skeen, Jr., filed December 29, 2005, asked why the nunc pro tunc judgment of September 2, 2005, had not been entered on the TDCJ computers through Huntsville. It is noted that the headquarters of TDCJ are located in Huntsville. On January 24, 2006, the Smith County District Clerk received a letter from the Plaintiff asking whether a copy of the nunc pro tunc judgment was sent to TDCJ in Huntsville. A similar letter was sent to District Clerk Lois Rogers, which was filed on January 24, 2006. Additional letters were sent to Judge Jack Skeen, Jr., District Attorney Matt Bingham, and Sheriff J. B. Smith on March 19, 2006.

On March 29, 2006, the court coordinator of the 241st Judicial District Court sent an internal memo to the District Clerk and Chief Deputy District Clerk stating that it "was to [her] understanding that sending out the Certified Copies of the Judgments Nunc Pro Tunc was done by our District Clerk's Office, due to the fact that when [she] worked in the District Clerk's Office on the 241st Felony Clerk desk [she] did the certified copies of the Nunc Pro Tunc Judgments." She further stated that it was her understanding that she was supposed to send nunc pro tunc judgments to the classification department at whichever TDCJ unit an inmate was housed. She noted that she had sent many such nunc pro tunc judgments to the Bradshaw Unit, which is another CCA facility. To her knowledge there had never been a problem with an inmate being held past his/her release date. She noted that she was sending certified copies of all nunc pro tunc judgments to TDCJ. On April 4, 2006, she sent a letter to the Dawson State Jail asking whether the nunc pro tunc judgment sent out on October 4, 2005, had been received.

Chief Deputy Clerk Karen Hisel stated in her affidavit that the policy was for the court coordinator, not the District Clerk, to provide the nunc pro tunc judgments to TDCJ. After she was contacted about the Plaintiff's problem in October, 2005, she mailed certified copies of the judgments to Dawson State Jail and the Plaintiff. She specified, however, that "Smith County, Texas has a policy whereby the court coordinators of each respective court are to send out certified copies of the nunc pro tunc judgments to TDCJ in Huntsville."

Finally, the competent summary judgment evidence reveals that the Plaintiff repeatedly asked Dawson State Jail employees for help in correcting the problem. She initially talked to Ms. Wynn, her case manager, who told her that she could not do anything. She would need to contact Smith County and that Smith County was responsible for getting the information to TDCJ in Huntsville.

Huntsville was responsible for updating the computers. The Plaintiff went up the chain of command and was repeatedly told by Dawson State Jail officials that their hands were tied. The Plaintiff testified that Dawson State Jail officials became rude to her over time as she sought help.

## Motions for Summary Judgment

Defendant CCA filed a motion for summary judgment (docket entry #39) on August 28, 2007. The Plaintiff filed a response (docket entry #42) on September 10, 2007. CCA filed a reply (docket entry #44) on September 14, 2007. Defendant Smith County filed a motion for summary judgment (docket entry #41) on September 10, 2007. The Plaintiff filed a response on September 26, 2007.

Defendant CCA asserted in its motion for summary judgment that a corporation acting under color of state law can only be liable under § 1983 for its own unconstitutional policies. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). CCA noted that the Plaintiff must show that CCA had a policy, custom or action by those who represent it which inflicted an actionable injury under § 1983. *Id.* The custom must be the "moving force behind the constitutional violation." *Id.* at 591. CCA argued that there was no evidence that its policies or customs were the "moving force" behind the Plaintiff's injuries, if she had suffered any. An affidavit by Dawson State Jail Warden Chuck Keeton was cited for the proposition that the CCA does not determine release dates and that the CCA may not release an inmate until it is notified to do so by TDCJ. CCA submitted competent summary judgment evidence showing that it was not authorized to release the Plaintiff until it was notified by TDCJ to release her on March 27, 2006. The Plaintiff was released on that date.

Defendant CCA argued that the Plaintiff's damages or injuries, if any, were due to Defendant Smith County's failure to notify TDCJ of the nunc pro tunc orders even though Smith County was on notice through the Plaintiff's letters that TDCJ needed to receive the orders directly from Smith County. CCA thus argued that the Plaintiff cannot show that it had a policy or custom that was the moving force behind the alleged violation of her constitutional rights.

Defendant CCA argued that the Plaintiff was not entitled to punitive damages because punitive damages are only proper when a defendant's conduct was motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). The later standard requires recklessness in its subjective form - i.e., a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations. *Smith*, 461 U.S. at 37, n.6.; *Kolstadt v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). CCA argued that the Plaintiff has failed to show that it violated any of her constitutional rights by her § 1983 claim, let alone show any evil intent or reckless indifference to that right. CCA thus argued that punitive damages are not available.

The Plaintiff's response noted that the docket sheet reveals that a copy of the September 2, 2005, nunc pro tunc judgment was mailed to Dawson State Jail on October 4, 2005. The court coordinator also confirmed that in a letter to Dawson State Jail dated April 4, 2006. The Plaintiff further noted that there was evidence that the December 30, 2005, nunc pro tunc judgment was faxed to Dawson State Jail. The Plaintiff cited her deposition testimony showing that she repeatedly spoke to Dawson State Jail employees regarding her incorrect release date. She went up the chain of command at the facility and was told there was nothing they could do. Over time, Dawson State Jail employees purportedly became rude, dismissive, intolerant and outright hostile to her.

The Plaintiff stressed that she attempted to do everything possible to correct her release date. Nonetheless, she served more than three months extra beyond her fourteen month sentence. She argued that courts "have recognized that it is hard to believe that a policy would be enacted in which an entity pursues a policy of inadequacy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). She argued that it was inadequate for Defendant CCA, acting under color of law, to affirmatively disregard proof of a violation of constitutional due process. She argued that it clearly was a policy or custom of CCA under these facts to disregard her statements by every level of the staff at the Dawson State Jail. *See Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002). She argued that Defendant CCA cannot be allowed to bind itself to a violation of due process and then claim that it lacked the power to perform any meaningful act to prevent that violation from occurring. The Plaintiff emphasized that CCA had proof in the form of a certified court document from mid-October 2005 through December 2005 of her proper release date and could not be troubled to make a call, send a fax, write a letter or take any meaningful action in this case. The Plaintiff characterized the situation as more than an inmate making a claim of an improper time calculation; instead, CCA was shown proof by a certified copy of the nunc pro tunc judgment. Smith County records show that Dawson State Jail employees received a copy of the nunc pro tunc judgment, not just from her, but directly from the court. The Plaintiff argued that the issue here is whether CCA employees recklessly disregarded her Constitutional right to due process and her rights under the Eighth and Fourteenth Amendments. She argued that she has shown that CCA's policy, or lack of policy, directly violated her Constitutional right to due process of law, which harmed her in that she lost more than three months of her life due to inaction and indifference on the part of CCA employees. She argued that CCA's motion for summary judgment should be denied.

Defendant CCA's reply reiterated the arguments it previously made. CCA argued that the Plaintiff has proffered no evidence to succeed on her claims against it and that she has not shown that a CCA policy or custom was the moving force behind her alleged constitutional violation. CCA went on to argue that the cases cited by the Plaintiff do not support her positions. In *Pineda v. City of Houston*, 291 F.3d at 328, the Fifth Circuit noted that a plaintiff must make the following showing: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." A single incident of unconstitutional activity is not sufficient to impose liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24; *Pineda*, 291 F.3d at 329. CCA specified that it does not admit that it violated the Plaintiff's constitutional rights, but to the extent that this one incident could be argued to be unconstitutional activity, the Plaintiff has not satisfied her burden under *Tuttle*. CCA argued that Smith County and TDCJ policies and procedures are at issue here. Even though Plaintiff argued that CCA employees should have done more to help her, she acted on the advice of her case manager to contact Smith County, and such correspondence eventually alerted Smith County to rectify its failure to follow its own policies.

CCA noted that the Plaintiff focused on the docket entry saying that a copy of the September 2, 2005, nunc pro tunc judgment was mailed to Dawson State Jail, but CCA asserted that it did not receive the nunc pro tunc judgment. Moreover, even if it had received the nunc pro tunc judgment, it was not authorized to release the Plaintiff unless and until notified by TDCJ. TDCJ policy requires orders regarding an inmate's sentence be sent directly from the county in which the order is entered. Furthermore, Smith County recognizes that it has a policy of sending nunc pro tunc orders to Huntsville in order to properly establish release dates. CCA argued that Plaintiff's numerous letters

to Smith County placed Smith County employees on notice that the nunc pro tunc order needed to be sent directly to TDCJ.  Therefore, there was no CCA policy, much less an unconstitutional policy, implicated in the present case.  CCA finally noted that there is no evidence that its employees were consciously indifferent since its employees advised her how to correct the situation.  CCA argued that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

Defendant Smith County began its motion for summary judgment by focusing on the facts as presented in an affidavit by Chief Deputy District Clerk Karen Hisel, excerpts from the Plaintiff's deposition and a certified copy of the docket sheet.  Karen Hisel noted that she sent a certified copy of the Plaintiff's judgment and sentence to Dawson State Jail in October, 2005.  She sent a certified copy of the nunc pro tunc judgment to both Dawson State Jail and to the Plaintiff.  She asserted that they were unaware that there was a problem regarding the Plaintiff's release date until Smith County was contacted by Dawson State Jail towards the end of March, 2006.  She then provided the necessary information to TDCJ, and the Plaintiff was released.  Defendant Smith County reviewed the Plaintiff's testimony about her efforts to get the release date corrected.  The Plaintiff testified that she was unaware of any policy or custom on behalf of Smith County that violated her constitutional rights.  Instead, she went to Ms. Wynn, her case manager at the Dawson State Jail, for help.  When she could not obtain any help from Ms. Wynn, she went up the chain of command.

Defendant Smith County, like CCA, cited *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978), for the proposition that the Plaintiff must show that it was the moving force behind a constitutional violation to hold it liable.  Smith County argued that it cannot be held liable unless the Plaintiff established (1) the existence of a municipal policy or custom that was executed with deliberate indifference to plaintiff's clearly established constitutional rights, and (2) the

8

existence of a direct causal link between the municipality's policy or custom and the deprivation of that plaintiff's constitutional rights. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Smith County argued that the Plaintiff has not shown that it was the "moving force" or "direct causal link" behind a constitutional violation. Moreover, its policies and customs were not deliberately indifferent to those rights. Smith County specified that its policy is to send nunc pro tunc orders to Huntsville in order for the inmate's release date to be calculated. Smith County argued that it has no custom that was executed with deliberate indifference towards the Plaintiff's constitutional rights, and that the Plaintiff has not shown a custom executed with deliberate indifference towards her rights.

Defendant Smith County noted that the Court Coordinator sent the nunc pro tunc order to Dawson State Jail in September and October, 2005, which was well before the Plaintiff's anticipated release date. It was noted that there is no statute, law, ordinance or anything otherwise that governs the issuance of nunc pro tunc orders. The Court Coordinator was acting in good faith and trying to do the right thing to remedy the situation. There was no evidence to the contrary. Smith County argued that CCA should have taken affirmative steps to ensure that the Plaintiff's time was properly calculated once it was alerted to the problem. Smith County argued that CCA turned its back on the Plaintiff and simply told her that it was her responsibility to have the County fix the problem. Defendant Smith County also argued that it is immune from punitive damages. *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). In conclusion, Smith County argued that it is entitled to summary judgment. Smith County argued that the competent summary judgment evidence demonstrates that no policy, practice or custom of Smith County violated any of the Plaintiff's rights or caused any injuries to her.

9

The Plaintiff's response to Smith County's motion for summary judgment began with a slight addition to her theory of recovery as stated in the original complaint. This time she argued that she was denied her right to due process of law as guaranteed by the United States Constitution and the Eighth and Fourteenth Amendments. In her original complaint, she argued that the Defendants violated her rights guaranteed by the Eighth Amendment to the United States Constitution made applicable to the Defendant by the Fourteenth Amendment to the United States Constitution.

The Plaintiff proceeded to present a thorough review of the aforementioned facts. The Plaintiff argued that there is a genuine issue of fact regarding causation, which necessarily stems from the exercise of a policy or custom on the part of Smith County. She emphasized that she may sue a local government for constitutional deprivations that were the product of a governmental "custom," even though the custom had not received formal approval through the body's official decision making-channels. *Monell*, 436 U.S. at 691-92. She noted that there were conflicting policies or customs of both the Smith County District Clerk's office and the court coordinator of the 241st Judicial District Court that caused the excessive imprisonment. Both parties claimed that they were not required to forward the judgments to TDCJ in Huntsville based on the policies and customs of their respective offices. She argued that she has presented evidence that Smith County's policies and customs were the cause of the violations of her right to due process of law. As a result, she was directly harmed in that she lost more than three months of her life due to inaction and indifference on the part of Smith County. She asserted that the issue cannot be resolved without a weighing of the credibility of the witnesses involved, thus summary judgment should be denied.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001); *Ragas v. Koch Gateway Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

      The competent summary judgment evidence makes it clear that the Plaintiff was incarcerated more than three months beyond her fourteen month sentence. The initial question for the Court is whether the fact that she was incarcerated more than three months beyond her sentence provides a basis for a potentially meritorious civil rights lawsuit. The Plaintiff argued that keeping her in custody beyond her release date violated her rights guaranteed by the Eighth Amendment, hence the Cruel and Unusual Punishment clause, made applicable to the Defendants through the Fourteenth Amendment. She cited no case law in support of her claim. Moreover, this Court did not discover any Fifth Circuit case law to support an Eighth Amendment claim. On the other hand, other circuits have found that there is a basis for an Eighth Amendment claim for keeping an inmate confined beyond the inmate's release date. *See Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir. 1985); *Sample v. Diecks*, 885 F.2d 1099, 1108-10 (3rd Cir. 1989); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). All three circuits found that the plaintiffs had to show deliberate indifference in order to state a potentially meritorious claim. None of the three cases have been cited as authority

by the Fifth Circuit. The Fifth Circuit's case law is quite the contrary. In *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir. 2000), the Fifth Circuit was concerned with a civil rights lawsuit filed by a detainee for wrongful detention after all criminal charges were dismissed. With respect to the plaintiff's Eighth Amendment claim, the Fifth Circuit held that the "'primary purpose of [the Cruel and Unusual Punishments] clause has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statutes' . . . . Jones, complaining about the fact of his incarceration rather than its conditions, fails to state a cause of action under the Eighth Amendment." *Id.* at 880 (internal citations omitted). The Plaintiff has not shown a basis for an Eighth Amendment claim under binding Fifth Circuit jurisprudence.

The Fifth Circuit has, however, dealt with civil rights claims by prisoners complaining about being held beyond their release dates under alternative theories of recovery. The first notable case was *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1969). Judge Goldberg described the theory of recovery as follows:

> We review here, in an action for false imprisonment under Texas law and for the deprivation of civil rights under 42 U.S.C.A. § 1983, the custodial derelictions of a Texas sheriff. The sheriff is accused of wrongfully overextending to an inmate of his jail the hospitality of his hostelry and the pleasure of his cuisine. The jury found for the sheriff. We reverse.

*Id.* at 785. The sheriff had detained the plaintiff for nine months after the dismissal of the indictments against the plaintiff. Judge Goldberg noted that "[f]ailure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint." *Id.* at 792. The Fifth Circuit held that the sheriff "was chargeable with constructive notice of the termination of all proceedings . . . The district court should have granted plaintiff's motion for directed verdict as to liability, and left for the jury only the issue

of damages." *Id.* at 793. The Fifth Circuit further held that the plaintiff was entitled to proceed on his pendent state claim of false imprisonment.

The Fifth Circuit, however, backtracked somewhat from the *Whirl v. Kern* decision in *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976), *cert. denied*, 429 U.S. 865 (1976). The Fifth Circuit noted that subsequent decisions on false imprisonment and the Supreme Court's decisions on official immunity "cast considerable doubt on the wisdom or continued vitality of that decision." *Id.* at 1213. The Fifth Circuit held that jailers will be held to a high level of reasonableness and will be liable for keeping an inmate improperly incarcerated if the record shows that the continued incarceration was the product of a negligent record keeping system. *Id.* at 1215. On the other hand, a jailer cannot be found liable if the errors took place outside of his realm of responsibility and, in such cases, a good faith defense is available. *Id.* The *Bryan v. Jones* decision would give some credence to the Plaintiff's argument that she was she was kept in custody more than three months too long because of conflicting policies and customs of the Smith County District Clerk's office and the court coordinator of the 241st Judicial District Court. In other words, they blamed each other for the failure to send certified copies of the nunc pro tunc judgments to TDCJ in Huntsville.

The *Bryan v. Jones* case, however, was not the last word on this issue. The possibility of a potentially meritorious lawsuit was further limited by the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984). The *Parratt/Hudson* doctrine stands for the proposition that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct. *See Martin v. Dallas County, Texas*, 822

14

F.2d 553, 555 (5th Cir. 1987). In *Martin*, the Fifth Circuit has applied the *Parratt/Hudson* doctrine to a situation where an inmate was confined three and one-half weeks too long for a DWI sentence. The Fifth Circuit held that "Texas law afforded Martin remedies against his illegal detention both while it was underway and for post-deprivation compensatory relief." *Id.* at 555. The Fifth Circuit thus held that an inmate may not bring a claim based on a denial of procedural due process or a claim that the extended incarceration was the product of negligence, as opposed to intentional conduct. *Id.* The Fifth Circuit left open the possibility of a constitutional claim based on substantive due process. *Id.* The Fifth Circuit thus reversed the decision granting Dallas County's motion for summary judgment for further consideration of the substantive due process claim. *Id.* at 556. In *Rodriguez v. Jones*, 51 F.3d 1041, 1995 WL 152729 (5th Cir. March 20, 1995) (unpublished), the Fifth Circuit followed *Martin* and held that a plaintiff had a constitutional basis for a lawsuit based on substantive due process if the defendants intentionally kept him in custody too long.

In light of *Martin v. Dallas County, Texas*, the Court concludes that the Plaintiff could have a basis for a potentially meritorious federal civil rights lawsuit if she was intentionally kept in custody beyond her release date. She did not, however, allege that her substantive due process rights were violated. Furthermore, she has not submitted competent summary judgment evidence that anyone intentionally kept her beyond her release date, thus the case should be dismissed.

Assuming *arguendo* that the Plaintiff was intentionally kept in custody beyond her release date,[1] the next issue for consideration concerns whether the Defendants may be held liable. The

---

[1] The Court would note that it is concerned that the Plaintiff was kept in custody for more than three months beyond her release date. It is further noted that the Plaintiff did not sue any individual for intentionally keeping her in custody beyond her release date. The remainder of this Memorandum Opinion will thus focus on whether the Defendants may be held liable for the actions of their employees.

Defendants could be liable, if at all, under the line of cases concerning municipal liability developed by *Monell* and its progeny. *See Olivas v. Corrections Corp. of America*, 408 F.Supp.2d 251, 254 (N.D. Tex. 2006), *affirmed*, 215 Fed. Appx. 332 (5th Cir. 2007) (applying *Monell* to claims against the CCA); *Fergason v. Smith*, 189 F.3d 468, 1999 WL 548441 (5th Cir. July 6, 1999) (unpublished) (applying *Monell* to claims against Smith County). Under *Monell*, the Defendants may not be held liable under § 1983 on a theory of respondeat superior. 536 U.S. at 693-94; *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In *Bryan County v. Brown*, *supra*, the Supreme Court noted that the line of cases starting with *Monell* require that a "plaintiff seeking to impose municipal liability under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." 520 U.S. at 403. The Supreme Court went on to discuss the concepts of a "policy" and "custom" as follows:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 403-04 (citations omitted). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. In cases where a "plaintiff is seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the

16

municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice." *Id.* at 406-407 (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 410. To satisfy the deliberate indifference prong, a plaintiff must ordinarily shown a pattern of violations. *Estate of Davis ex re. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Defendant CCA argued that the Plaintiff has not shown that it had a policy or custom that injured her nor shown that it was the moving force behind a constitutional violation. In response, the Plaintiff focused on *City of Oklahoma City v. Tuttle*, *supra*, and *Pineda v. City of Houston, supra,* in arguing that CCA's motion for summary judgment should be denied. The Plaintiff contends that *City of Oklahoma City,* 471 U.S. at 824, stands for the proposition that "[c]ourts have recognized that it is hard to believe that a policy would be enacted in which an entity pursues a policy of inadequacy." The Supreme Court's actual statement was as follows:

> Here the instructions allowed the jury to infer a thoroughly nebulous "policy" of "inadequate training" on the part of the municipal corporation from the single incident described earlier in this opinion, and at the same time sanctioned the inference that the "policy" was the cause of the incident. Such an approach provides a means for circumventing *Monell*'s limitations altogether. Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.* at 823-24. The Supreme Court thus held that the jury charge in that case was improper since it would have permitted the jury to hold the city liable based solely upon proof that the city employed

a non-policy making officer who violated the Constitution. *Id.* at 824. The Supreme Court's decision does not provide any help to the Plaintiff in order to proceed on her claims. The decision in *Pineda v. City of Houston* likewise provided no help to the Plaintiff. The Fifth Circuit held that reports of eleven incidents of warrantless entries was not sufficient proof to create a fact issue on the pattern of conduct. 291 F.3d at 329.

      The CCA has submitted competent summary judgment evidence that it does not determine release dates and that it may not release an inmate until it is so notified to do so by TDCJ. The Plaintiff was released on March 27, 2006, when TDCJ authorized her release. CCA had a facially lawful policy. Furthermore, the competent summary judgment evidence shows that CCA's employees were not deliberately indifferent. The Plaintiff admitted in her deposition that CCA's employees gave her advice about how to correct the situation. CCA's employees advised Plaintiff that Smith County had to ensure that proper procedures were followed with regard to her release. The Plaintiff, in fact, followed the advice given to her and contacted Smith County. The Plaintiff argued that Defendant CCA should have done more, but the failure to do more does not rise to the level of deliberate indifference. The Plaintiff has not submitted competent summary judgment evidence that creates a fact issue on deliberate indifference that must be submitted to a jury. CCA's motion for summary judgment should be granted.

      Defendant Smith County argued that it is entitled to summary judgment because the Plaintiff has neither shown that it was the "moving force" or "direct causal link" behind a violation to the Plaintiff's constitutional rights nor shown that this enforcement was deliberately indifferent to her rights. Smith County has shown that it did not have an official policy of violating the constitutional rights of the Plaintiff or anyone else. Its policy was to send nunc pro tunc judgments to TDCJ

Huntsville in order for an inmate's release date to be calculated. The application of its policy did not cause a constitutional violation or harm. Smith County correctly argued that the Plaintiff has not provided competent summary judgment evidence showing that it had a policy that harmed her.

Defendant Smith County also argued that it did not have a custom that was executed with deliberate indifference towards the Plaintiff's constitutional rights. The Plaintiff has not shown that Smith County had a pattern of violating rights that gives rise to an inference of a custom. The competent summary judgment evidence in this case reveals that the Chief Deputy Clerk sent a certified copy of the judgments to Dawson State Jail in October, 2005. The court coordinator of the 241st Judicial District Court likewise sent a copy of the nunc pro tunc judgment to Dawson State Jail well before the Plaintiff's release date. She also noted that nunc pro tunc judgments had been routinely sent to the Bradshaw State Jail and that she was unaware that there was ever a problem with an inmate being held beyond the inmate's release date. Both the court coordinator and the Chief Deputy Clerk acted in good faith to help the Plaintiff, as opposed to deliberate indifference. It was also clearly the practice to send nunc pro tunc judgments to TDCJ in Huntsville. The problem in this case was that the court coordinator thought the clerk's office would send the nunc pro tunc judgments to Huntsville, and the clerk's office thought the court coordinator would send the nunc pro tunc judgments to Huntsville. Smith County correctly noted that there are no statutes, laws, ordinances or anything lese that governs the issuance of nunc pro tuncs. Nonetheless, the nunc pro tunc judgment was not sent to Huntsville until March, 2006. The failure to send the nunc pro tunc judgments to Huntsville in this case was a mistake, at best negligence, and not the product of intentional conduct or deliberate indifference required to hold Smith County liable. The Plaintiff has not submitted competent summary judgment evidence that creates a fact issue on deliberate

indifference that must be submitted to a jury. Smith County's motion for summary judgment should be granted.

Finally, both Defendants correctly argued that the Plaintiff may not recover punitive damages. CCA correctly noted that punitive damages are proper only when a defendant's conduct was motivated by an evil intent or demonstrated reckless or callous indifference to a person's constitutional rights. *Smith v. Wade*, 461 U.S. at 56. The Plaintiff has not submitted competent summary judgment evidence satisfying this standard. Furthermore, Smith County correctly argued that it is immune from punitive damages. *City of Newport v. Fact Concerts*, *supra*.

In conclusion, the Plaintiff failed to show that she has a basis for a potentially meritorious civil rights lawsuit for being held beyond her release date. She likewise failed to show that the Defendants should be liable for compensatory and punitive damages. The Defendants' motions for summary judgment should be granted. It is accordingly

**ORDERED** that CCA's motion for summary judgment (docket entry #39) and Smith County's motion for summary judgment (docket entry #41) are **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 1st day of October, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE